**CALVARY TEMPLE CHURCH, INC.,**
Appellant–Defendant,

v.

**Phillip C. PAINO, Appellee–Plaintiff.**

No. 93A02–8911–EX–617.

Court of Appeals of Indiana,
First District.

June 14, 1990.

James E. Dowling, Indianapolis, for appellant-defendant.

Henry J. Price, Jerry Garau, Price & Shula, Indianapolis, for appellee-plaintiff.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Calvary Temple Church, Inc. (Calvary), on behalf of its worker's compensation carrier CIGNA[1], appeals an award by the Worker's Compensation Board (Board) to Phillip C. Paino (Paino). We affirm.

## FACTS

While he was acting in the course and scope of his employment with Calvary on October 4, 1985, Paino was injured in an automobile accident. Paino, Calvary and CIGNA filed an agreement with the Board on December 6, 1985, whereby Paino would receive temporary total disability payments. CIGNA paid Paino a total of $12,-

**1.** Unless otherwise noted, we will refer to Calvary and CIGNA as CIGNA.

460 in temporary total disability payments covering a period of 70 weeks.

On October 2, 1987, Paino filed an application requesting the Board's review of a change in conditions. Paino sought an award of permanent partial impairment and permanent total disability and payment of medical expenses incurred. Although a Board hearing was scheduled for January 11, 1988, CIGNA requested a continuance. On January 28, 1988, CIGNA tendered twenty-eight checks totalling $80,906.00 for payment of Paino's medical expenses. However, because the checks were made payable to both Paino and his group health insurance carrier, Paino refused the tender and demanded payment to himself.

Following the accident, Paino sued the third party tort-feasor in federal court. Paino reached an agreement with the third party on May 3, 1988, but the agreement did not mention Calvary or CIGNA and was not signed by them. In addition, the federal court did not dismiss Paino's third party suit or enter an order protecting CIGNA's right to reimbursement.

On February 7, 1989, after concluding that Paino's agreement was not a settlement as defined by IND. CODE § 22-3-2-13, a Single Hearing Member ordered CIGNA to pay Paino's permanent partial impairment of $26,796 [2] and medical expenses of $91,036.89 [3]. The Full Board affirmed the award on November 1, 1989 and entered findings of fact and conclusions of law. Further facts will be provided as necessary.

**2.** This amount of permanent partial impairment was the amount remaining after CIGNA was credited with $3,204 excess temporary total disability paid.

**3.** CIGNA was credited with $330 medical expenses already paid. CIGNA also paid $2,142.39 toward health care providers which the Board determined were for the employer's benefit in monitoring Paino's condition and were not for Paino's benefit. The Board determined this amount would not be reimbursable to CIGNA from any third-party settlement which might be made. Therefore, after credit, CIGNA was required to pay $90,706.89 medical expenses. Although CIGNA complains about the Board's determination the $2,142.39 would not be reimbursable, CIGNA does not frame the matter as

## ISSUES

Calvary raises six issues and Paino raises an additional issue which we restate as follows:

1. Whether the Board erred in ordering CIGNA to pay Paino's medical expenses and permanent partial impairment award despite Paino's prior agreement with the third-party tort-feasor who injured Paino?

2. Whether the Board erred in ordering CIGNA to pay a pro-rata share of Paino's attorneys' fees?

3. Whether the Board's award of permanent partial impairment and medical expenses was supported by sufficient evidence?

4. Whether the Board erred and acted outside the scope of its authority in ordering CIGNA to pay interest on the award to Paino?

5. Whether the Board's award should be increased by ten percent and CIGNA should be ordered to pay Paino's appellate attorneys' fees? [4]

## DISCUSSION AND DECISION

We first note our standard of review of an appeal from a decision of the Full Worker's Compensation Board of Indiana. We are bound by the Board's factual determinations, *Houchins v. Pierponts* (1984), Ind.App., 469 N.E.2d 786, 787, and we will not reverse the findings unless it conclusively appears that "the evidence

an issue nor cite authority other than *Talas v. Correct Piping Co., Inc.* (1982), Ind., 435 N.E.2d 22 which we find not helpful on the matter. We decline to address CIGNA's comments as an issue and defer to the Board's findings and conclusions on the matter.

**4.** Paino also raises as an issue the possibility that Calvary, by failing to strictly comply with the Appellate Rules, waived any errors of the Board. Although Calvary's arguments are hard to follow and its issues are not set forth specifically and followed by the corresponding argument pursuant to Appellate Rule 8.3(A)(7), Calvary has substantially complied with the rules and our review has not been thwarted. Therefore, we decline to address the matter as an issue.

upon which the Board acted was devoid of probative value or was so proportionately inadequate that the finding could not rest on a rational basis." *Dane Trucking Co. v. Elkins* (1988), Ind.App., 529 N.E.2d 117, 120–121, *trans. denied.* Even where evidence is conflicting, we may not reweigh it or rejudge the credibility of the witnesses. *Id.* at 121.

*Issue One*

Relying on language in IND. CODE § 22–3–2–13, CIGNA contends the Board erred by ordering CIGNA to pay Paino $26,796 for permanent partial impairment, determined by the Board as $60 per week for 500 weeks less a $3,204 credit for CIGNA's payment of temporary total disability for more than fifty-two weeks. CIGNA also argues the Board erred in ordering it to pay medical expenses of $91,036.89, less $330 already paid by CIGNA. CIGNA contends its liability to pay compensation and medical expenses terminated when Paino made an agreement with the third party on May 3, 1988. CIGNA characterizes the agreement between Paino and the third party as a settlement. A settlement relieves an employer or worker's compensation carrier of liability to pay further compensation. IND. CODE § 22–3–2–13. *Carrier Agency, Inc. v. Top Quality Building Products, Inc.* (1988), Ind.App., 519 N.E.2d 739, 742.

■ The Single Member examined the written agreement in camera and received testimony from the attorney for the third party about the agreement. The Single Member found Calvary and CIGNA had not signed the agreement, and concluded there had been no final settlement, as defined by IND. CODE § 22–3–2–13, between Paino and the third party. The Board also concluded no settlement agreement meeting the requirements of IND. CODE § 22–3–2–13 had occurred since Calvary

and CIGNA had not signed the agreement and no judgment or dismissal order protecting CIGNA's lien had been entered by the federal court in which the third party action was pending. While we agree with CIGNA's contention that the agreement appears to have been a settlement, we also recognize the Board is technically correct in its conclusion. Furthermore, we find it unnecessary to our disposition of this issue to determine whether the agreement was or was not a settlement.[5]

■ Until an employee's permanent impairment is adjudicated, an employer must furnish an injured employee with a doctor and assume all medical expenses necessary to treatment of the injury. IND. CODE § 22–3–3–4; *Gregg v. Sun Oil Co.* (1979), 180 Ind.App. 379, 381, 388 N.E.2d 588, 589, *trans. denied.* CIGNA's liability to pay Paino's medical expenses arose before the May 3, 1988, agreement between Paino and the third party and before the award by the Single Member on February 7, 1989.

■ Once an injury has stabilized and reached a permanent and quiescent state, temporary disability ends and the degree of permanent impairment must be determined. *Covarubias v. Decatur Casting* (1976), 171 Ind.App. 533, 536, 358 N.E.2d 174, 176. On March 18, 1988, CIGNA filed a motion before the Board agreeing to pay compensation on the basis of a physician's opinion which set Paino's permanent partial impairment at 80% of the person. This was an admission that Paino's injury had reached a permanent and quiescent state with a determined extent of permanent injury. The Board found that at a hearing on June 7, 1988, the Single Member had established Paino's permanent partial impairment at 80% of the person, and that CIGNA had not contested the finding.[6] Thus, CIGNA's liability to pay permanent partial impairment arose when Paino's con-

---

**5.** CIGNA contends the Single Member erred in refusing to admit into evidence the agreement between Paino and the third-party. Because of our deferential standard of review, we will not second-guess the Board's determination that the agreement was irrelevant and would not supplement the oral testimony provided at the hearing.

**6.** CIGNA raises a question about the determination of permanent partial impairment which we will discuss further in Issue Three.

dition reached a permanent and quiescent state at some time before CIGNA's March 18, 1988 motion and Paino's May 3, 1988, agreement with the third party.

The Board ordered reimbursement of CIGNA from funds from any final settlement between Paino and the third party. The Board computed the amount of reimbursement at $130,622.89 less $43,540.96 which was CIGNA's pro rata share of Paino's attorney's fees. The $130,622.89 included CIGNA's payment of medical expenses of $91,366.89, permanent partial impairment of $26,796, and temporary total disability of $12,460. Thus, except for $2,142.39 medical expenses incurred by CIGNA for monitoring Paino's condition, interest on unpaid medical expenses, statutory interest on the judgment, and a share of attorney fees, CIGNA was completely reimbursed for expenditures involving Paino.

CIGNA incurred its obligation to pay medical expenses and permanent partial impairment before the agreement between Paino and the third party. Furthermore, as the Board ordered that CIGNA be fully reimbursed by funds from the third party tort-feasor, the effect of the Board's order was that CIGNA was not actually required to pay future compensation. Therefore, the Board did not err in ordering CIGNA to pay the $26,796 for permanent partial impairment or $91,036.89 for medical expenses which CIGNA is appealing.

*Issue Two*

■ CIGNA contends the Board erred in ordering him to pay one-third of Paino's attorneys' fees, computed as $43,540.96, based upon the total of the amount CIGNA had paid Paino in temporary total disability and medical expenses and the amount CIGNA was obligated to pay Paino for medical expenses and permanent partial impairment.

The seventh paragraph of IND. CODE § 22-3-2-13 provides that an employer or its compensation insurance carrier pay a pro rata share of the costs and expenses of

asserting the third party claim, action, or suit. In *Indiana State Commission v. White* (1973), 259 Ind. 690, 291 N.E.2d 550 our supreme court interpreted an earlier version of the same statute and reasoned that neither the duty of the employer to compensate the injured employee nor the right of the employee to receive compensation was diminished by the existence of a valid damage claim against a third party tort-feasor. The court further reasoned that if the employee failed to sue the third party, the employer could sue the third party based upon the employer's right to subrogation. However, since the employer would have had to pay all of its own attorneys' fees when instituting a subrogation suit, the employer or its compensation insurance carrier benefitted, to the full extent of the employer's obligation under the Act, from a judgment or settlement of an action brought by the employee. The court noted the employer or its carrier, when reimbursed by the third party, received not only an amount equal to the payments made to the employee but also the value of having future compensation installments terminated. The court held that attorneys' fees, therefore, should be computed upon the total, after deduction of costs and expenses of the claim, of the amount which the employer or its carrier had already paid and the amount which it remained obligated to pay. *Id.* at 696–97, 291 N.E.2d at 554. In reaching its decision, the court relied upon *Caputo v. Best Foods, Inc.* (1955), 17 N.J. 259, 111 A.2d 261 and *Travelers Insurance Co. v. Lumber Mutual Casualty Ins. Co. of New York* (1952), 20 N.J.Super. 265, 89 A.2d 717.[7]

CIGNA benefitted from Paino's assertion of a claim against the third party. Therefore, based upon the holding in *White*, CIGNA is obligated by IND. CODE § 22-3-2-13 to pay one-third of Paino's attorneys' fees computed on the total of the amount already paid by CIGNA for medical expenses and temporary total disability and the remaining amount CIGNA was obligat-

---

7. *See also Jones v. Melroe Div., Clark Equipment Co.* (1981), 102 Ill.App.3d 1103, 58 Ill.Dec. 934, 430 N.E.2d 1385; *Security Insurance Co. v. Nor-* ris (1969), Ky., 439 S.W.2d 68; *Crawley v. Schick* (1973), 48 Mich.App. 728, 211 N.W.2d 217.

ed to pay for medical expenses and permanent partial impairment. As noted above, the Board determined that total to be $130,622.89. We hold the Board did not err in ordering CIGNA to pay $43,540.96, one-third of the above total, to Paino's attorneys.

*Issue Three*

 CIGNA argues the Board's award of permanent partial impairment and medical expenses was not supported by sufficient evidence. The record reflects that CIGNA's counsel either stipulated to or admitted the facts necessary for the Board's award. In its motion of March 18, 1988, requesting the Board to add Paino's group health insurance carrier as a defendant, CIGNA stated that a medical opinion setting Paino's permanent partial impairment at 80% of the person had been rendered and CIGNA agreed to pay compensation as set forth by the doctor. In hearings of June 7, 1988, and November 1, 1988, CIGNA's counsel acknowledged that the medical opinion set the permanent partial impairment at 80%. In addition, when medical bills were submitted by Paino at the June 1, 1988, hearing, CIGNA's counsel did not object to the accuracy, reasonableness, or necessity of the bills, but objected to them only because of their lack of relevancy based on CIGNA's contention that its obligation had terminated upon Paino's agreement with the third party. In the November 1, 1988, hearing CIGNA's counsel stated medical expenses were $91,000 and admitted CIGNA was not contesting that amount. The Board based its award of medical expenses and permanent partial impairment on the above admissions by CIGNA's counsel. In light of CIGNA's admissions and failure to object to presentation of the medical bills for their accuracy, reasonableness, or necessity, we cannot say there was insufficient evidence to support the Board's award.

*Issue Four*

 CIGNA contends the Board acted outside the scope of its authority when it ordered CIGNA to pay interest on the amount of the award. In *Northern*

*Indiana Public Service Co. v. Citizens Action Coalition of Indiana, Inc.* (1989), Ind., 548 N.E.2d 153, the power of the Utility Regulatory Commission to award interest was challenged because the power was not expressly granted to the Commission by the legislature. The court reasoned that the Public Service Commission Act did not abrogate the statutory or common law right of a party to receive interest on money owed and held the Commission had the authority to award interest. *Id.* at 160. Similarly, nothing in the Worker's Compensation Act abrogates either the statutory or common law right of a worker to receive interest on money owed. We hold the Board acted within the scope of its authority in ordering CIGNA to pay interest on the money it owed Paino.

*Issue Five*

 Paino argues that if we affirm the Board's award, we should increase the award ten percent instead of the five percent provided for by IND. CODE § 22-3-4-8 in the case of an appellate court affirmance of a Board award. Paino also argues that, as a punitive measure pursuant to Appellate Rule 15(G), we should award Paino his appellate attorney fees. Paino argues these awards are justified by CIGNA's failure to comply in certain particulars with the Rules of Appellate Procedure. As our review was not thwarted by these omissions and as CIGNA's appeal was not frivolous, we disagree with Paino's contention. No appellate attorney fees should be awarded to Paino. Paino's award from the Board, including the interest from the date of the award to the date of the present decision, should be increased by five percent.

We affirm the Board's award of permanent partial impairment and medical expenses to Paino, including an award of interest on the judgment. We also affirm the Board's order that CIGNA pay a pro rata share of the attorneys' fees which Paino incurred in his proceeding against the third party. Finally, in accordance with IND. CODE § 22-3-4-8, we order

CIGNA to pay an additional five percent on Paino's award from the Single Member.

Affirmed.

CHEZEM, P.J., and ROBERTSON, J., concur.