Roger Dale BOWLES, Appellant–Plaintiff,

v.

GRIFFIN INDUSTRIES, Appellee–Defendant.

No. 93A02–0603–EX–173.

Court of Appeals of Indiana.

Oct. 18, 2006.

---

4. The eldest of Mother's five children is in the custody of his father, Mother's former husband or boyfriend.

C. Richard Marshall, Columbus, IN, Attorney for Appellant.

Michael G. Getty, Emily D. Smith, Hill Fulwider McDowell Funk & Matthews, Indianapolis, IN, Attorneys for Appellee.

1. *See* Ind.Code §§ 22–3–1–1 to 22–3–12–5.

## OPINION

CRONE, Judge.

### Case Summary

Roger Bowles ("Bowles") appeals an order of the Worker's Compensation Board of Indiana ("the Board"). We affirm.

### Issue

Bowles presents one issue, which we restate as whether the Worker's Compensation Act ("the Act")[1] requires an employer, here Griffin Industries ("Griffin"), to pay interest on temporary total and total permanent weekly disability payments that were allegedly paid late.

### Facts and Procedural History

The facts of this case were well-stated in Bowles's first two appeals.

The facts most favorable to the Board's decision reveal that on December 15, 1986, Bowles visited Dr. Ronald G. Bennett complaining of back problems, bilateral leg pain, and difficulty walking. Bowles told Dr. Bennett that he had suffered from back pain for seven years and that his back pain was so severe that he had been hospitalized the previous June. Dr. Bennett noted that Bowles had previously been treated with cortisone injections. Dr. Bennett saw Bowles again in January and February 1987 because of Bowles's continued back pain, and, in August 1987, Dr. Bennett performed a discectomy on Bowles to alleviate his symptoms.

On October 24, 1990, Bowles, while employed full-time by Griffin as a driver, injured his lower back "in an incident arising out of and in the course of his employment" for Griffin. Appellee's Br. p. 1. Griffin paid Bowles temporary total disability (TTD) benefits and statutory medical benefits from the day of the incident until September 22, 1993.

Bowles filed his Application for Adjustment of Claim on September 30, 1993.

A hearing before a member of the Board was conducted on May 25, 2000, and on March 5, 2002, the member found that Bowles was permanently partially impaired (PPI) as a result of the October 24, 1990 injury. Moreover, the Board member found that Bowles's PPI rating was 21% of the whole person, as determined by Dr. Bennett. The Board member adopted Dr. Bennett's opinion that 11% impairment—53.5% of the 21% impairment rating—was attributable to the injury he received while employed with Griffin and 10% impairment—46.5% of the 21% impairment rating—was caused by Bowles's prior condition. Thus, the Board member awarded Bowles $6600 in reduced PPI benefits. The Board member held that "Just as his PPI is apportioned between his prior active condition and his work injury of October 24, 1990, pursuant to Ind.Code 22–3–3–12, [Bowles's] PTD should also be apportioned." Appellant's Br. p. 55. Accordingly, the Board member awarded Bowles $55,967.13 in PTD benefits, which represented 53.5% of the PTD benefits he would have received had he not had a preexisting condition.

*Bowles v. Griffin Indus.,* 798 N.E.2d 908, 909–10 (Ind.Ct.App.2003) (*"Bowles I"*); *see* Appellant's App. at 8–15 (March 5, 2002 single hearing member's award). After an October 22, 2002 hearing, the Board affirmed the single member's award in an order issued November 8, 2002. Appellant's App. at 16–17. Bowles appealed that order.

In *Bowles I,* decided on November 20, 2003, we first noted that this case centered on Indiana Code Section 22–3–3–12, "which apportions worker's compensation awards between pre-employment and employment periods in the event that an inju-ry suffered in the course of employment aggravated a prior medical condition." *Bowles I,* 798 N.E.2d at 910. We determined that the Board had simply applied the impairment ratio to determine the allocation of a disability award and that this procedure was not within the language of Indiana Code Section 22–3–3–12. *Id.* at 912. We ultimately reversed and remanded the case back to the Board. *Id.*

Before the Board could take any action on remand,

in January of 2004, Griffin Industries' insurer paid Bowles the remainder of the benefits he was entitled to for his permanent total disability (PTD). Thus, by January 29, 2004, Bowles had received all of the temporary total disability (TTD) and PTD benefits he was entitled to under Indiana Code section 22–3–3–10. On January 29, 2004, Bowles, pursuant to Indiana Code section 22–3–3–13, filed an application for benefits from Indiana's Second Injury Fund. In his application, Bowles also requested retroactive entry into the Second Injury Fund as of November 21, 2001. In July of 2004, a single member of the Board granted Bowles entry into the Second Injury Fund as of January 29, 2004, but denied his request for retroactive admittance. Bowles appealed this decision to the full Board. On November 3, 2004, the full Board issued an order affirming the decision of the single member.

*Bowles v. Second Injury Fund,* 827 N.E.2d 142, 144 (Ind.Ct.App.2005) (*"Bowles II"*), *trans. denied.*

The November 3, 2004 Order by the full Board stated in pertinent part:

It is further found that this cause has been set and continued by the parties in this case multiple times over a span of 11 (eleven) years due to multiple reasons including failure of the Plaintiff [Bowles] to timely respond to discovery requests.

It is further found that the following examples indicate the above referenced delay: [More than twenty-five dated entries are detailed.]

It is further found that at all times the cause was set the Board was willing and able to hear the cause. [Bowles] at no time asked for an expedited hearing.

It is further found that but for the delay caused by [Bowles] in failing to respond to discovery in a timely fashion this case would have had a hearing and final award issued by the Board several years before the claimant was eligible for Second Injury Fund benefits.

It is further found that the delay on behalf of the parties should not be borne by the Second Injury Fund, which is funded by all Indiana employers.

It is further found that any delay in the process did not preclude [Bowles] from filing his application to the Second Injury Fund.

It is further found that Administrative Rule 631 IAC 1–1–31 states that "compensation from the second injury fund shall commence on the filing date of claimant's application for said benefits." [Bowles] had the ability to file his application and preserve that date while appealing the decision of the Board, but [Bowles] failed to do so.

It is further found that the order of the Single Hearing Member shall be sustained. [Bowles] shall continue to receive current benefits from the Second Injury Fund as approved.

*Id.* at 144–46. Bowles appealed that order.

In February 2005, while his second appeal was pending, Bowles submitted a stipulated record and requested that the Board order an award of interest. Appellant's App. at 31–42. By then, Griffin had paid Bowles, through its worker's compensation insurance carrier, medical expenses of $129,652.68, temporary total disability of $16,627.26 (for 78 weeks), permanent total disability of $106,585.00 (for 500 weeks), and permanent partial impairment of $6,600 (for an 11% whole body). *Id.* at 4 (stipulation), 42.

In a May 13, 2005 opinion, we affirmed the Board's November 3, 2004 order and held that the Board

> properly concluded that Bowles was only entitled to benefits from the Second Injury Fund starting from January 29, 2004, and that he was not entitled to retroactive entry into the Second Injury Fund because Bowles did not exhaust the benefits available to him under Indiana Code section 22–3–3–10 until January 29, 2004 and because any delay in exhausting those benefits is attributable to Bowles.

*Bowles II,* 827 N.E.2d at 148.

On August 3, 2005, a single hearing member of the Board entered an order denying Bowles's "request for both pre and post judgment interest[.]" Appellant's App. at 45. Within that order, the single hearing member made the following findings:

9. Several pre-trial conferences were held, primarily to arrive at a stipulated record on which a decision could be made.

10. Although the conferences, whether in person or telephonic, were not recorded, apart from addressing the contents of [Bowles's] affidavit and the admission of some correspondence between counsel, the discussions primarily addressed the only two Indiana appellate cases that dealt with interest on workers compensation awards. *Calvary Temple Church, Inc. v. Paino,* 555 N.E.2d 190 (Ind.Ct. App.1990) and *Joseph E. Seagram & Sons Inc. & [v.] Willis,* 401 N.E.2d 87 (Ind.Ct.App.1980).

11. In *Seagram*, the court held there was no statutory authority to award pre-judgment interest.

12. Ten years later, a different panel of the court held in *Paino* that a Plaintiff was entitled to post-judgment interest on a workers compensation award because Indiana's Worker's Compensation Act had not abrogated common law interest.

13. Bowles seeks both pre and post-judgment interest.

14. However, in briefing the issue, [Griffin] has raised a point that really was not addressed at the pre-trial conferences and the point is a telling one.

15. At this time and since the Indiana Court of Appeals reversed the Full Board's decision on November 20, 2003, there has been no award or judgment concerning Bowles' claim; there were simply orders remanding the claim, first to the Full Board and then to the Single Hearing Member.

16. [Griffin] argues that for interest to attach there must be a judicial order or judgment stating a specific sum for payment.

17. [Griffin] cites *Blinzinger v. Americana Healthcare Corp.*, 505 N.E.2d 449 (Ind.Ct.App.1987) to support this argument. In *Blinzinger* a trial court remanded a case to the Indiana Department of Public Welfare for decision of a Medicare rate increase. The Indiana Court of Appeals affirmed. The Department deposited money with the trial court for withdrawal by the plaintiff. Plaintiff sought interest, the trial court awarded pre-judgment interest. In the second appeal, the Indiana Court of Appeals reversed the interest award because there was no judgment by the trial court on which to award interest.

18. The analogy to Bowles' case is well taken. There is no order or award by either the Full Board or the Single Hearing Member awarding compensation.

19. Therefore, even though *Paino* supports the recovery of interest on an award of workers compensation benefits, in this matter there is no award or order on which to tax interest, there is no predicate judgment.

20. Therefore, [Bowles's] request for both pre and post judgment interest is denied.

*Id.* at 44–45. Bowles appealed the above decision to the full Board. After hearing counsels' arguments on the matter, the Board issued an order on February 3, 2006, adopting and affirming the decision of the single hearing member. *Id.* at 46–47. Bowles now appeals.

### Discussion and Decision

■ Bowles asserts that Griffin's insurer "very belatedly paid worker's compensation disability benefits" and that these tardy payments violated the Act's requirement of "payment of a specific weekly disability sum on a specific schedule of weekly dates." Appellant's Br. at 6. Bowles contends that the "delinquent" payments deprived him of the "timely use of funds to which he [was] entitled" while simultaneously allowing Griffin and its insurer "to enjoy the investment use and benefit" of "improperly withheld" funds. *Id.* Bowles argues that nothing in the Act abrogates either his statutory or common law right to receive interest on disability money owed. In addition, he maintains that the Act "constitutes a contract between employer and employee, and the employer must discharge its contractual liability by paying such benefits at the time or times, and in the amount or amounts, provided for in the contract." *Id.* at 7. Stated otherwise, to "*fully* comply with the Act," an employer must either

timely pay "or, if paying in a delayed fashion, pay[ ] the statutory weekly sum owing, plus interest." *Id.* at 10. While we understand Bowles' time value of money argument, as we outline below, neither the Act nor the case law mandates the payment of interest under the circumstances presented.

The Act provides compensation for employees who suffer injuries that occur "by accident arising out of and in the course of their employment." Ind.Code § 22–3–2–5; *Tanglewood Trace v. Long,* 715 N.E.2d 410, 413 (Ind.Ct.App.1999), *trans. denied.* The Act should be liberally construed to effectuate its humane purposes; consequently, it should be construed in favor of employees and beneficiaries. *See Tippmann v. Hensler,* 716 N.E.2d 372, 380 (Ind.1999).

In reviewing a worker's compensation decision, we are "bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion." *Kovatch v. A.M. Gen.,* 679 N.E.2d 940, 942 (Ind.Ct.App.1997), *trans. denied.* "We must disregard all evidence unfavorable to the decision and consider only the evidence and reasonable inferences therefrom which support the Board's findings." *Id.* Conversely, we are not bound by the Board's interpretation of the law and will reverse a decision if the Board incorrectly interprets the Act. *Duvall v. ICI Americas, Inc.,* 621 N.E.2d 1122, 1124 (Ind.Ct.App.1993). Nevertheless, we will pay due deference to the interpretation of a statute by the administrative agency charged with its enforcement in light of its expertise in its given area. *Ballard v. Book Heating & Cooling, Inc.,* 696 N.E.2d 55, 56 (Ind.Ct.App.1998), *trans. denied.*

We find the case of *Joseph E. Seagram & Sons, Inc. v. Willis,* 401 N.E.2d 87 (Ind.Ct.App.1980), instructive in resolving the issue raised by Bowles. In *Seagram,* the Board had granted worker's compensation benefits to a widow for the death of her husband, but had overruled her motion to award interest from the date of the decedent's death until the accrued benefits were paid. In affirming the Board, the *Seagram* panel explained:

The only allegation of error advanced by the claimant [widow] in her cross-appeal is that the Board erred in overruling her motion to add interest from the date of the [decedent's/employee's/husband's] death until the accrued benefits are paid. Arguing from the premise that the employer's obligation to pay death benefits is contractual in nature, she reasons that, in regard to liquidated amounts under contracts, interest accrues from the date when money is due which in this case is asserted to be the date of the decedent's death. These assertions miss the mark.

A proceeding for workmen's compensation is purely statutory in origin and procedure. Therefore the rights and obligations of the parties concerned must be determined by reference to the act of the Legislature. *Federal Cement & Tile Co. v. Pruitt, Admrx.* (1957), 128 Ind.App. 126, 146 N.E.2d 557. The Legislature in the enactment and amendments of the Workmen's Compensation Act has specified with particularity the factual situation giving rise to a right of compensation, the procedure to be observed in connection therewith and the awards that may be made. It is the statute itself that speaks with reference to these matters.

Obviously it was not the intent of the Legislature that rights or duties might be asserted in addition to those specifically granted and imposed. The provisions of the statute exclude implications.

Whatever the reasons therefore, *the fact remains that the Legislature has not seen fit to amend the statute by incorporating a provision for interest on an award from the date of death.* Had the Legislature intended that administrative officers clothed with authority to carry out the provisions of the law might allow interest from the date of death in addition to the amounts fixed by way of compensation, it undoubtedly would have made a provision to that end. This was not done, however, and the *courts have no authority to read into the statute a provision that the Legislature has purposely omitted. Town of Schererville v. Vavrus* (1979), Ind.App. [180 Ind. App. 500], 389 N.E.2d 346. Whether interest from date of death should be allowed on an award is a matter for determination by the Legislature and not the courts.

*Id.* at 92–93 (emphases added). Significantly, in the quarter century since Seagram was handed down, the Legislature has amended the Act numerous times, but has never added a provision requiring prejudgment interest on a worker's compensation award. We have no authority to read in such a requirement.[2]

Bowles' response to *Seagram* is: "obviously *Paino* overruled and superseded *Seagram.*" Appellant's App. at 14; *see Calvary Temple Church, Inc. v. Paino,* 555 N.E.2d 190 (Ind.Ct.App.1990). The panel in *Paino* affirmed a Board's award of permanent partial impairment and medical expenses, "including an award of interest on the judgment." *Paino,* 555 N.E.2d at 195. We excerpt that opinion's discussion of interest:

CIGNA [employer's worker's compensation carrier] contends the Board acted outside the scope of its authority when it ordered CIGNA to pay interest on the amount of the award. In *Northern Indiana Public Service Co. v. Citizens Action Coalition of Indiana, Inc.* (1989), Ind., 548 N.E.2d 153, the power of the Utility Regulatory Commission to award interest was challenged because the power was not expressly granted to the Commission by the legislature. The court reasoned that the Public Service Commission Act did not abrogate the statutory or common law right of a party to receive interest on money owed and held the Commission had the authority to award interest. *Id.* at 160. Similarly, nothing in the Worker's Compensation Act abrogates either the statutory or common law right of a worker to receive interest on money owed. We hold the *Board acted within the scope of its authority in ordering CIGNA to pay interest on the money it owed Paino.*

*Id.* (emphasis added).

Had *Paino* meant to either overrule or supersede *Seagram,* we are confident that the *Paino* decision would have at least mentioned *Seagram.* It did not. The omission of *Seagram* from *Paino* may have been because the two cases addressed different issues. *Seagram* dealt with the Board's *denial* of a request for interest "from the date when money is due," in essence a denial of *pre*-judgment interest. *Seagram,* 401 N.E.2d at 93. *Paino* analyzed the Board's *award* of "interest from the date of the award to the date of the present decision," that is, an order of *post*-judgment interest. *Paino,* 555 N.E.2d at

**2.** In his reply brief, Bowles lists numerous sections of the Act, which he argues require weekly payments of worker's compensation. *See* Reply Br. at 3–5 (citing, *inter alia,* Ind. Code §§ 22–3–3–4(b), 22–3–3–7; 22–3–3–8; 22–3–3–10(b); 22–3–3–22; 22–3–3–24). We read these sections as instructions for calculating the amounts owed—not as a schedule of when payments are due.

195. Further, *Paino* did not hold that such interest should always be awarded, only that the Board was within the scope of its authority in ordering post-judgment interest in that situation. *Id.*

Bowles attempts to bolster his argument by referencing *DePuy, Inc. v. Farmer*, 847 N.E.2d 160, 171 (Ind.2006), a recent opinion that cites *Paino.* The focus of *DePuy* was whether a worker's compensation award should be increased pursuant to Indiana Code Section 22–3–4–8(f). Section 8(f) provides: "An award of the full board affirmed on appeal, by the employer, shall be increased thereby five percent (5%), and by order of the court may be increased ten percent (10%)." According to our supreme court, this statute "explicitly requires the courts to increase the award by five percent if affirmed, and gives the courts discretion to increase the award an additional five percent." *DePuy*, 847 N.E.2d at 171.

In determining that an increase of ten percent was appropriate per Section 8(f), our supreme court noted: "Although the statute is silent on the point, the Court of Appeals has long held that a worker's compensation award may include interest." *Id.* at 172 (citing *Paino*, 555 N.E.2d at 195). "Farmer's [award] did not [include interest]. Farmer's injuries were incurred over a decade ago, and he has yet to receive *any* worker's compensation benefit. This delay is nearly twice the time consumed by most cases from injury to final determination on appeal." *Id.* (emphasis added). "As Farmer points out, the extra five percent is far less than the interest on the award over that period of time." *Id.* Although noting that DePuy's issues were not frivolous, and that "disingenuous" defenses "are usually the basis of an enhanced award[,]" the *DePuy* court thought "a delay of over a decade warrants an additional five percent even if, as here,

the employer in good faith raises fairly debatable issues." *Id.*

As the above excerpts demonstrate, *DePuy* is distinguishable from Bowles' case in both the issue addressed and the facts presented. *DePuy* concerned the propriety of *increasing* an award pursuant to Section 8(f), rather than whether pre-judgment interest should be ordered. Moreover, unlike Bowles, the claimant in *DePuy* had received *no* worker's compensation benefit in the ten years since he suffered the injury. *DePuy* does not alter our conclusion that pre-judgment interest was properly denied in the present case.

Our conclusion in this regard is consistent with that of numerous other jurisdictions. *See, e.g., Weaver v. State Indus. Ins. Sys.*, 104 Nev. 305, 756 P.2d 1195 (1998) (claimant not entitled to interest on worker's compensation benefits paid only after successful litigation, absent legislative authorization for same); *Standard Fire Ins. Co. v. Morgan*, 745 S.W.2d 310, 313–14 (Tex.1987) (claimant could not recover pre-judgment interest because worker's compensation act does not permit such recovery); *Latour v. Producers Dairy, Inc.*, 102 N.H. 5, 148 A.2d 655, 658 (1959) (failure to permit interest in worker's compensation claim was not error in absence of statutory provision therefor); *Gaffney v. Indus. Accident Bd.*, 133 Mont. 448, 324 P.2d 1063, 1065 (Mont.1958) (absent specific statute in worker's compensation act authorizing the charging of interest on accrued compensation payments, no interest may be assessed or charged; Act's schedule of benefits constitutes maximum payments allowable).

In the alternative, Bowles makes a "general Indiana interest law" argument. Citing various contract cases with little or no explanation, Bowles asserts that interest should have been granted here because the funds due were "easily ascertainable," yet

paid "very belatedly." Appellant's Br. at 18, 6. In examining this contention, we review the timeline of events in this case.

Griffin paid Bowles TTD benefits and statutory medical benefits from the day of the incident, October 24, 1990, until September 22, 1993. *Bowles I*, 798 N.E.2d at 909–10. At that point, Bowles filed his application for adjustment of claim. Eleven years, numerous motions to continue by both parties, and several requests for extensions later,[3] the matter was finally ready to be decided by a single hearing member. *Bowles II*, 827 N.E.2d at 144–46. On May 25, 2000, the single hearing member conducted a hearing. *Bowles I*, 798 N.E.2d at 910. On March 5, 2002, the single member awarded Bowles $6600 in reduced PPI benefits and $55,967.13 in PTD benefits, but also considered a credit for already-paid TTD. *Id.;* Appellant's App. at 14–15(B). On April 29, 2002, Bowles' counsel faxed a letter to Griffin, which included calculations as to the amount owing ($20,356.89) and a promise that Bowles would "waive any claim which he may have for interest" if "defendant/insurer will promptly pay this amount[.]" Appellant's App. at 15A–15B. In May 2002, Griffin, through its insurer, paid Bowles $20,356.89. *Id.* at 33.

After an October 22, 2002 hearing, the Board affirmed the single member's award in an order issued November 8, 2002. *Id.* at 16–17. Bowles appealed that order, and we reversed and remanded the case on November 20, 2003, noting that vocational factors needed to be part of the equation in reducing a disability award. *Bowles I*, 798 N.E.2d 908. On December 18, 2003, Bowles' counsel notified Griffin's insurer

that his $20,356.89 calculation had been incorrect and that an additional $25,420.71 was due.[4] Griffin's insurer paid this additional amount on January 23, 2004. Appellant's App. at 33. After the order was remanded to the Board, Griffin could have retained a vocational rehabilitation specialist or submitted other evidence to support a reduction in Bowles' disability award. Instead, on February 25, 2004, Griffin, again through its insurer, issued a $50,627.87 check to settle the matter. *Id.*

The above recitation of facts illustrates two things. First, the award was anything but "easily ascertainable." Rather, the parties, various experts, the members of the Board, and this Court have all weighed in (in many cases, more than once) regarding what the proper award should be under the law. Second, Griffin did not pay "very belatedly." To the contrary, along the way, whenever agreements were reached, Griffin swiftly made payment—as evidenced by the payments in May 2002, January 2004, and February 2004. Griffin did not appeal or contest those certain amounts. Of additional importance, Bowles received medical benefits from the day of the incident and for three years thereafter. Given these circumstances, we conclude that interest is not appropriate.

Having reached our conclusion, we stress that we do not disagree with either the case law permitting *post*-judgment interest in certain situations or the separate statutory authority to award such interest. *See Paino*, 555 N.E.2d 190; *see also Hatfield v. Higgins*, 31 N.E.2d 650, 651, 108 Ind.App. 681, 683 (1941) (reversing denial of motion for "interest on the deferred installments *from and after the time they*

---

3. Indeed, at one point, during an almost two-year period of inactivity, the Board issued an order to show cause why the matter should not be dismissed for want of prosecution. *Bowles II*, 827 N.E.2d at 145–46.

4. In a refreshingly forthright letter, Bowles' counsel took responsibility for the error in his previous calculation. Appellant's App. at 39.

*became due under the judgment* of the Circuit Court until the time that they were actually paid"; and citing then-current statute that authorized post-judgment interest) (emphasis added); *see* Ind.Code § 24–4.6–1–101 ("Except as otherwise provided by statute, interest on judgments for money whenever rendered shall be from the date of the return of the verdict or finding of the court until satisfaction" at a maximum rate of eight percent). However, even if one could characterize the amounts determined here as "judgments," Griffin's insurer paid them immediately as they arose. Therefore, interest is not merited.

In sum, we will not overturn the Board's decision, which denied Bowles' request for interest.

Affirmed.

BAKER, J., and VAIDIK, J., concur.