ATTORNEY FOR APPELLANT
C. Richard Marshall
Columbus, Indiana

ATTORNEYS FOR APPELLEE
Donald S. Smith
Cheryl D. Finchum
Riley Bennett & Egloff, LLP
Indianapolis, Indiana



## In the
## Indiana Supreme Court

No. 93S02-0711-EX-561

CHRISTOPHER R. BROWN, D.D.S., INC.,

*Appellant (Plaintiff below),*

v.

DECATUR COUNTY MEMORIAL HOSPITAL,

*Appellee (Defendant below).*

Appeal from the Worker's Compensation Board of Indiana,
Application No. C-159326

On Petition To Transfer from the Indiana Court of Appeals, No. 93A02-0703-EX-236

**August 27, 2008**

**Rucker, Justice.**

In this opinion we explore whether the Worker's Compensation Board may award interest on worker's compensation benefits including past due medical bills. We conclude that in the absence of express statutory authority it may not do so.

**Facts and Procedural History**

On April 26, 2001, while employed by Decatur County Memorial Hospital and attending a work related seminar, Dorine Trimnell was involved in an automobile collision with a hit-and-run driver. As a consequence Trimnell suffered multiple bodily injuries including injuries to her face, head, and neck. The following day Trimnell notified her employer of the collision. As required by statute, Hospital's worker's compensation insurance carrier, American Physicians Capital, Inc. ("Insurer"), provided Trimnell several medical specialists, including Christopher R. Brown, D.D.S., Inc. ("Dr. Brown"). See Ind. Code § 22-3-3-4(a) ("After an injury and prior to an adjudication of permanent impairment, the employer shall furnish or cause to be furnished, free of charge to the employee, an attending physician for the treatment of his injuries, and in addition thereto such surgical, hospital and nursing services and supplies as the attending physician or the worker's compensation board may deem necessary.").[1]

On numerous occasions Dr. Brown billed Insurer for services rendered to Trimnell. Insurer periodically paid portions of the bill. On October 15, 2002, contending he was owed $10,597.49 for unpaid services rendered, Dr. Brown filed an Application for Adjustment of Claim for Provider Fee. Insurer continued to make periodic partial payments, and thereafter on November 17, 2004, Dr. Brown filed an Amended Application contending the unpaid balance had increased to $17,292.88. He also filed a motion requesting interest of eight percent (8%) per annum on "each of his 2001-2004 billings" that were "either not paid in full or which were only partially paid . . . ." App. at 42.

---

[1] The parties agree that Trimnell's injuries arose out of and in the course of her employment, thus triggering the application of Indiana's Worker's Compensation Act. I.C. § 22-3-2-2(a). Also, Hospital does not refute Dr. Brown's claim that he is an attending physician within the meaning of the Act. App. at 43.

On December 6, 2004, the scheduled date for hearing on the Amended Application, Insurer paid Dr. Brown $14,230. The hearing was continued, and thereafter Insurer paid Dr. Brown $700 and $125 in March and September 2005 respectively. On October 5, 2005, the parties filed, and a single hearing member of the Board approved, a joint stipulated agreement. Among other things, acknowledging that a "dispute arose as to the amount of [Dr. Brown's] bills," the parties agreed that Hospital and Insurer would pay Dr. Brown $1,256.32 representing "all outstanding expenses for care rendered by [Dr. Brown] to Dorine Trimnell as a result of her accident." App. at 51-52. The parties also agreed that Dr. Brown reserved his claim for payment of interest, and the Board would resolve in the future whether Dr. Brown was entitled to interest. Within two weeks the agreed upon amount was paid in full, bringing the account balance to zero.

On July 12, 2006, a hearing was held before a single hearing member of the Board. The sole issue presented was whether Dr. Brown was entitled to pre-judgment interest. The hearing member ruled in favor of Dr. Brown:

> After initially disputing Dr. Brown's claim for services rendered in treating Trimnell's [injuries], the Hospital has agreed to pay the bill. However, Dr. Brown has requested interest on the outstanding balance. The parties have presented argument.
>
> Although the workers compensation statute provides for review of provider claims with a view of holding the employer responsible for comparable services in the geographic area where the injury occurred and where the services were provided, the Act does not address interest on amounts due for such services. There is no specific prohibition against interest. The interest issue is generally raised in relation to workers compensation benefits. There is a split of authority on that point with two Indiana Court of Appeals cases addressing the issue and reaching opposite conclusions.
>
> Finding no prohibition in the Act, Dr. Brown and his corporate entity are entitled to interest according to the usual commercial law and statutory provisions for service accounts.

App. at 83. Hospital sought review before the full Board, which reversed the single hearing member's decision by a vote of four to three. Dr. Brown appealed, and the Court of Appeals

affirmed the full Board's decision.  See Christopher R. Brown, DDS, Inc. v. Decatur County Mem'l Hosp., 873 N.E.2d 69 (Ind. Ct. App. 2007).  Having previously granted transfer, we also affirm the full Board's decision.

## Standard of Review

In reviewing a worker's compensation decision, an appellate court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion.  Eads v. Perry Twp. Fire Dep't, 817 N.E.2d 263, 265 (Ind. Ct. App. 2004); Kovatch v. A.M. Gen., 679 N.E.2d 940, 942 (Ind. Ct. App. 1997).  We examine the record only to determine whether there are any substantial evidence and reasonable inferences that can be drawn therefrom to support the Board's findings and conclusion.  Perez v. U.S. Steel Corp., 428 N.E.2d 212, 216 (Ind. 1981).  As to the Board's interpretation of the law, an appellate court employs a deferential standard of review to the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area.  Natural Res. Comm'n v. Porter County Drainage Bd., 576 N.E.2d 587, 589 (Ind. 1991).  The Board will only be reversed if it incorrectly interpreted the Worker's Compensation Act.  Duvall v. ICI Americas, Inc., 621 N.E.2d 1122, 1124 (Ind. Ct. App. 1993).

## Discussion

### I.

To support his argument for an award of interest, Dr. Brown directs our attention to Indiana statutory and case authority standing for the proposition that once the amount of damage is readily ascertainable as of a particular time a claimant can only be fully compensated by the payment of interest.  Br. of Appellant at 7-8 (citing, among others, I.C. §§ 24-4.6-1-101, 104; Stephens v. Parkview Hosp., Inc., 745 N.E.2d 262, 266-67 (Ind. Ct. App. 2001); 17 I.L.E. Interest and Usury § 1, at 5 (2003)).

Indiana law has long recognized the time value of money and has acknowledged that in order to achieve full compensation for the loss of use of property a claimant has the right to be

4

paid pre-judgment interest on sums owed that are belatedly paid. 17 I.L.E. Interest and Usury § 1, at 5 (citing cases). Indiana law also provides for the collection of interest upon sums due from a patient for unpaid hospital bills. See I.C. § 24-4.6-1-101, 103; I.C. § 32-33-4-1; Stephens, 745 N.E.2d at 266-67 (awarding pre-judgment interest on hospital lien arising from medical services provided for personal injury); accord Washington County Mem'l Hosp. v. Hattabaugh, 717 N.E.2d 929, 933-34 (Ind. Ct. App. 1999).

But these authorities fall outside of Indiana's Worker's Compensation Act, which is silent on the question of whether interest may be awarded on past due benefits. Where the matter has been addressed in other jurisdictions having worker's compensation statutes, the decisions have been varied. Some courts have held that no interest is assessable on deferred payments in the absence of express statutory authority.[2] See, e.g., Weaver v. State Indus. Ins. Sys., 756 P.2d 1195, 1195-96 (Nev. 1988) (per curiam) ("Although the legislature was aware that workers' compensation claims would often be litigated, and indeed provided the mechanism for judicial review of the decisions of the legislatively created agency which administers the workers' compensation statutes, the legislature did not provide that interest on delayed workers' compensation awards should be allowed."); Sanchez v. Molycorp, Inc., 703 P.2d 925, 931 (N.M. Ct. App. 1985) ("Since workmen's compensation proceedings are statutory remedies, no common law right to prejudgment interest exists."); Haret v. State Accident Ins. Fund Corp., 697 P.2d 201, 204 (Or. Ct. App. 1985) (in banc) (Interest not available because "Workers' Compensation is strictly a creature of statute, replacing a worker's common law remedies for

_____

[2] Indeed at least thirty states have enacted legislation allowing interest on worker's compensation benefits. See Ark. Code Ann. § 11-9-809 (2002); Cal. Lab. Code § 5800 (West 2003); Colo. Rev. Stat. § 8-43-410(2) (2007); Conn. Gen. Stat. Ann. § 31-300 (West 2003); Del. Code Ann. tit. 19, § 2350(e) (2005); Fla. Stat. Ann. § 440.20(8) (West Supp. 2008); Ga. Code Ann. § 34-9-107 (2008); Idaho Code Ann. § 72-734 (2006); Iowa Code Ann. § 85.30 (West 1996); Kan. Stat. Ann. § 44-512b (2000); Ky. Rev. Stat. Ann. § 342.040(1) (LexisNexis 2005); La. Rev. Stat. Ann. § 23:1201.3(F) (2005); Me. Rev. Stat. Ann. tit. 39-A, § 205(6) (Supp. 2007); Md. Code Ann., Lab. & Empl. § 9-748 (LexisNexis 1999); Mass. Gen. Laws Ann. ch. 152, § 50 (West 2005); Mich. Comp. Laws Ann. § 418.801(6) (West 1999); Minn. Stat. Ann. § 176.221(7) (West 2006); Mo. Ann. Stat. § 287.160(3) (West 2005); Neb. Rev. Stat. § 48-125(2) (2004); N.J. Stat. Ann. § 34:15-28 (West Supp. 2008); N.Y. Workers' Comp. Law § 13-g(1) (McKinney 2005); N.C. Gen. Stat. § 97-86.2 (2007); Okla. Stat. Ann. tit. 85, § 42(A) (West 2006); 77 Pa. Cons. Stat. Ann. § 717.1(a) (West 2002); Tex. Lab. Code Ann. § 408.064 (Vernon 2006); Utah Code Ann. § 34A-2-420(3) (2005); Va. Code Ann. § 65.2-707 (2007); Wash. Rev. Code Ann. § 51.32.080(6) (West Supp. 2008); W. Va. Code Ann. § 23-4-16a (LexisNexis 2005); Wis. Stat. Ann. § 102.22 (West 2004).

job-related injuries. . . . The act is a complete statement of the rights of workers to compensation for injuries covered thereby.").

Courts in other jurisdictions have awarded interest relying on their state's general interest statutes. See, e.g., Land & Marine Rental Co. v. Rawls, 686 P.2d 1187, 1191-92 (Alaska 1984) (applying the state's general interest statute in the absence of a specific statute authorizing interest upon workers' compensation awards in keeping with the spirit of the workers' compensation law); McCormack v. Stewart Enters., Inc., 956 S.W.2d 310, 313 (Mo. Ct. App. 1997) (looking to the general interest statutes because no section of the Workers' Compensation Act addressed the issue of interest on medical expenses). But even in jurisdictions that allow interest in the absence of express legislative authority under the worker's compensation statute, there is no consensus on whether doing so applies equally to pre-judgment as well as post-judgment interest. Compare Ex parte Stanton, 545 So. 2d 58, 59 (Ala. 1989) (denying an award for pre-judgment interest because it would be part of a claimant's "rights and remedies" governed exclusively by the Act, which is silent on the matter but stating, "[P]ost-judgment interest . . . should apply to a workmen's compensation award.") with Lopez v. Smith's Mgmt. Corp., 744 P.2d 544, 546-47 (N.M. Ct. App. 1986) (denying an award of pre-judgment interest where worker's compensation statute was silent on the matter but awarding post-judgment interest under the general interest statute).

In similar fashion, where worker's compensation statutes are silent on the matter but courts nonetheless allow an award of interest, there is a considerable difference among the states concerning the date from which interest should run. See e.g., DKI Corp./Sylvan Pools v. Indus. Comm'n of Ariz., 845 P.2d 461, 465 (Ariz. 1993) (Interest on temporary compensation benefits accrues on the date of the award, notice of claim status, or is otherwise liquidated.); Zafrilla v. Volare Shoes, Inc., 394 So. 2d 146, 146-47 (Fla. Dist. Ct. App. 1981) (Interest on medical expenses due and payable when, after a reasonable period of investigation, they should have been paid by the employer/carrier.); Holt v. Spencer Lumber Co., 199 P.2d 268, 271 (Idaho 1948) (Interest on weekly installments begins to run only from the date of the award.); USX Corp. v. Workers' Comp. Appeal Bd., 754 A.2d 64, 68 (Pa. Commw. Ct. 2000) (Interest on compensation benefits runs from the date the employee establishes the right to compensation.).

6

We cite the foregoing cases from various jurisdictions to illustrate the lack of any unanimity or uniformity in the decisions on the subject of allowing interest on past due compensation benefits.[3] Although there appears to be a trend in favor of allowing interest where the worker's compensation statutes are silent, see 8 Larson's Workmen's Compensation Law § 134.04, at 134-36 (2008) (collecting cases), there is no clear weight of authority.

Our own cases have not been entirely consistent on the subject. In Joseph E. Seagram & Sons, Inc. v. Willis, 401 N.E.2d 87, 93 (Ind. Ct. App. 1980), a panel of the Court of Appeals affirmed the Board's denial of a widow's request for interest on worker's compensation death benefits, holding that "[w]hether interest from date of death should be allowed on an award is a matter for determination by the Legislature and not the courts." More recently in Bowles v. Griffin Indus., 855 N.E.2d 315, 315 (Ind. Ct. App. 2006), citing Seagram with approval, a panel of the Court of Appeals affirmed the Board's denial of a request for both pre- and post-judgment interest. By contrast, in Calvary Temple Church, Inc. v. Paino, 555 N.E.2d 190, 195 (Ind. Ct. App. 1990), a panel of the Court of Appeals affirmed the Board's grant of interest on an award of medical expenses and permanent partial impairment declaring, "Nothing in the Worker's Compensation Act abrogates either the statutory or common law right of a worker to receive interest on money owed. We hold the Board acted within the scope of its authority in ordering [employer's insurer] to pay interest on the money it owed [claimant]." Recently, in DePuy, Inc. v. Farmer, 847 N.E.2d 160, 172 (Ind. 2006), this Court cited Calvary Temple observing, "Although the statute is silent on the point, the Court of Appeals has long held that a worker's compensation award may include interest."

We think Seagram embraces the better view on this subject. First, the remedies provided in the Worker's Compensation Act are in derogation of the common law. Wine-Settergren v. Lamey, 716 N.E.2d 381, 388 (Ind. 1999). And the law in this jurisdiction is settled that if the

---

[3] Added to this mix is the lack of consensus on the question of whether unpaid and overdue medical expenses owed to a third party are treated the same as compensation benefits owed to the injured worker. Compare Moretz v. O'Neill Investigations, 783 P.2d 764, 766 (Alaska 1989) ("[T]he only reasonable reading of the word 'compensation' is one which includes medical benefit payments.") with Standard Fire Ins. Co. v. Morgan, 745 S.W.2d 310, 313 (Tex. 1987) ("[A] worker cannot recover pre-judgment interest on past medical expenses because such expenses are not 'past due weekly installments' within the meaning of [the Act].").

Worker's Compensation Act applies to an injury, then the rights and remedies granted to an employee by the Act "exclude all other rights and remedies of such employee . . . ." I.C. §§ 22-3-2-6, 22-3-6-1(e). As we have also observed the basic policy underlying the Act was to shift the economic burden for employment-connected injuries from the employee to the employer:

> When an injury to a servant is found to be covered by a workers' compensation act, it is uniformly held that the statutory compensation is the sole remedy, and that any recovery against the employer at common law is barred. It is recognized that this remedy is in the nature of a compromise, by which the worker is to accept a limited compensation, usually less than the estimate which a jury might place upon his damages, in return for an extended liability of the employer, and an assurance that he will be paid.

Sims v. U.S. Fid. & Guar. Co., 782 N.E.2d 345, 351-52 (Ind. 2003) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 80, at 574 (5th ed. 1984) (footnotes omitted)). This *quid pro quo* regime represents a deliberate policy choice by the General Assembly in an apparent response to the Industrial Revolution when "more and more men poured their lives, their limbs, and their health into the might of industry." Sims, 782 N.E.2d at 352 (quoting Ben F. Small, *Workmen's Compensation Law of Indiana* § 1.2, at 4-5 (1950)).

Essentially, Indiana's Worker's Compensation Act sets forth a comprehensive system for the compensation of injuries arising out of and in the course of employment. As demonstrated by the various approaches taken in other jurisdictions, crafting a rule that allows interest on medical payments or worker's compensation benefits involves choosing among an array of equally compelling policy considerations. Because the system is uniquely legislative in nature and alters the common law rights and liabilities of both employees and employers, appellate courts should be hesitant to disturb the delicate balance the General Assembly has reached and thus refrain from applying provisions not expressly included in the statutory scheme.

It is of course true that the Act must be liberally construed to effectuate its humane purposes and doubts in the application of terms are to be resolved in favor of the employee. McQuade v. Draw Tite, Inc., 659 N.E.2d 1016, 1018 (Ind. 1995). However, this general rule of statutory construction cannot justify the inclusion of a substantive right not supported by any fair

reading of the statutory provision. "The [Act] is a humane enactment designed and intended for the protection of workmen who come within its provisions, which are and ought to be liberally construed and applied, so as to extend that protection to the ultimate good of the greatest possible number of our workers; but the extent and limitation of its applicability also are fixed by those provisions and we cannot, by judicial pronouncement, enlarge these beyond the very obvious intent of the Legislature . . . ." McGill Mfg. Co. v. Dodd, 116 Ind. App. 66, 59 N.E.2d 899, 901 (1945).

In plain terms, there is nothing in the Act that could be read to authorize an award of interest. If a policy consideration suggests that interest on worker's compensation awards should be allowed, then the legislature and not the courts should implement such a policy. We conclude the Worker's Compensation Board properly denied Dr. Brown's request for interest on unpaid medical bills.

## II.

Dr. Brown next contends that any interpretation of the Worker's Compensation Act that results in the denial of his request for interest on overdue medical bills violates Article I, Section 23 of the Indiana Constitution. According to Dr. Brown, "[t]here is no compelling public policy or rational reasoning why a health care provider should be treated more harshly by the Worker's Compensation Board than what would have been the provider's automatically-assured relief and remedy obtainable from a civil court." Pet. to Trans. at 7. In sum, Dr. Brown argues that because the Act requires delinquent payment claims of healthcare providers be submitted to the Board – where no interest is allowed – he is treated differently than healthcare providers who may pursue delinquent payments in court and be awarded interest.

We first observe that the underlying purposes of the Act include providing an "expeditious and adequate remedy" for workers injured in work-related accidents and ensuring "a more certain remedy for the injured worker." Sims, 782 N.E.2d at 353 (quotations omitted). A healthcare provider that voluntarily agrees to service an injured worker at the request of the worker's employer is bound by the terms and conditions of the Act. See e.g., Minn. Ass'n of

9

Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare, 742 F.2d 442, 446 (8th Cir. 1984) (finding the voluntary participation in the state's Medicaid program placing limits on rates nursing homes could charge residents not constitutionally infirm where nursing homes have the freedom to decide whether to remain in business and thus subject themselves voluntarily to the limits imposed by state law). We also observe that although the Act does not provide the Board with authority to award interest on overdue medical bills, there is nothing in the Act that prohibited Dr. Brown from negotiating with Hospital to include such a provision in any contract of engagement.

In any event the Equal Privileges Clause of the Indiana Constitution provides, "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." Ind. Const. Art. I, § 23. In Collins v. Day, 644 N.E.2d 72, 80 (Ind. 1994), the Court announced the test for determining whether a statute follows the dictates of Article I, Section 23.

> First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

Id. at 80. Legislative classification becomes a judicial question only where the line drawn appears arbitrary or manifestly unreasonable. Sims, 782 N.E.2d at 353. So long as the classification is based upon substantial distinctions with reference to the subject matter, we will not substitute our judgment for that of the legislature nor will we inquire into the legislative motives prompting such classification. Id. The burden is on the challenger to negate every conceivable basis which might have supported the classification. Id. (quoting Collins, 644 N.E.2d at 80).

Dr. Brown challenges only the first prong of the Collins test. But it is clear there is a substantial difference between healthcare providers who treat patients outside as opposed to inside of the worker's compensation regime. Importantly, patients are generally responsible for

10

their own medical bills. Healthcare providers treating patients outside the context of worker's compensation may or may not receive payment for services rendered. In contrast the Act places healthcare providers on much firmer footing by guaranteeing the payment of medical claims. I.C. § 22-3-5-5(4); Sears Roebuck & Co. v. Murphy, 511 N.E.2d 515, 516-517 n.2 (Ind. Ct. App. 1987) ("[I]t is clear the legislature intended for the employer and its workmen's compensation carrier to *pay* the claims, including the medical claims, of its employees who are injured or killed by accident arising out of and in the course of the employment.") (emphasis in original). In addition the Act relieves healthcare providers from the potential costs and delays associated with civil litigation by allowing payment claims to be presented to the Board. I.C. § 22-3-3-5.

The different treatment accorded Dr. Brown is reasonably related to differences between healthcare providers who provide medical services to patients covered by the Act and those not so covered. As a result Dr. Brown has failed to support his claim that his Equal Privileges rights have been violated.

**Conclusion**

We affirm the judgment of the Board.

Shepard, C.J., and Dickson and Sullivan, JJ., concur.
Boehm, J., concurs with separate opinion.

11

**Boehm, Justice, concurring.**

I agree with the majority that Indiana's Worker's Compensation Act is silent on the question of interest for past due compensation benefits and healthcare bills, and that any authorization for interest should come from the General Assembly. I write separately to suggest that the Act already addresses the issue of late payments, and to set out what I see as the practical consequences of our decision.

The Act creates a healthcare market that differs from the private healthcare market in several respects. Under the Act, healthcare providers are not permitted to collect payments from the employee, his estate, or family members, but instead must claim against the employer and the employer's insurance carrier before the Worker's Compensation Board. Ind. Code §§ 22-3-3-5, -5.1 (2004). Healthcare charges are subject to the approval of the Worker's Compensation Board, id. § 22-3-4-12, and charges over a certain threshold may be reduced. Id. § 22-3-3-5.2. The Act thus establishes a collection system different from that available to healthcare providers outside the worker's compensation system. This system does not explicitly allow for interest on late payments. It does, however, provide a mechanism to address the problem of carriers "dragging their feet" in settlement and payment of claims. Section 22-3-4-12.1 permits the Board to award a claimant between $500 and $20,000 if the employer, or the employer's administrator or insurance carrier, acts with a lack of diligence or bad faith in adjusting or settling a claim. The sentence in section 22-3-4-12 subjecting healthcare charges to the Board's approval expressly refers to this bad faith section, so the remedy is available to providers as well as workers.

As a practical matter, a legal rule that interest on providers' bills is not to be awarded by the Board merely sets the background against which providers are free to agree or refuse to agree to treat workers. As the majority notes, nothing prevented Dr. Brown from negotiating with the worker's employer or its insurer to require interest on late payments, assuming the Board would approve such a voluntary undertaking. If competitive pressures in the marketplace will not allow him to achieve that by agreement, the overall costs of workers' compensation will be a little lower, and if he can demand a contractual right to interest, the employer's costs will be increased. Having no legal right to an award of interest from the Board leaves that issue to the marketplace. On the other hand, if interest is to be required as a matter of law, then that cost will

1

be built into the insurers' premiums, or borne by employers who self-insure.  Either way, it seems to have little impact on the worker who gets the service.  I therefore join in the majority's opinion, which leaves this issue to the General Assembly if change is required.