**WASHINGTON TOWNSHIP FIRE DEPARTMENT, Appellant–Defendant,**

v.

**BELTWAY SURGERY CENTER, (Vance May, Employee), Appellee–Plaintiff.**

No. 93A02–0811–EX–1006.

Court of Appeals of Indiana.

June 24, 2009.

Rehearing Denied Sept. 3, 2009.

Doris L. Sweetin, Jeb A. Crandall, Brandon G. Milster, Sweetin & Bleeke, P.C., Bryan H. Babb, Kellie M. Johnson, Bose McKinney & Evans, LLP, Indianapolis, IN, Attorneys for Appellant.

Anthony W. Overholt, Maggie L. Smith, Frost Brown Todd, LLC, Apryle A. Fryer, Hardamon & Associates, Indianapolis, IN, Attorneys for Appellee.

Mark D. Gerth, Kightlinger & Gray, LLP, Indianapolis, IN, Attorney for Amici Curiae, Insurance Institute of Indiana and the Indiana Manufacturers Association.

## OPINION

BARNES, Judge.

### Case Summary

Washington Township Fire Department ("Washington Township") appeals a decision of the Worker's Compensation Board ("the Board") awarding to Beltway Surgery Center ("Beltway") the full amount of Beltway's medical bills for treatment to an employee of Washington Township. We affirm.

### Issues

The restated issues before us are:

I. whether the Board properly placed the burden on Washington Township to prove that Beltway's billed charges exceeded the maximum permissible under the Indiana Worker's Compensation Act ("the Act"); and

II. whether the Board properly awarded Beltway the full amount of its billed charges.

### Facts

On March 1, 2005, Beltway provided medical services to Vance May[1] for injuries sustained during the course and scope of May's employment by Washington Township. Beltway submitted a bill for $11,563.30 for medical services to Washington Township's worker's compensation insurer, Indiana Public Employers Plan ("IPEP"). IPEP in turn hired Mednet, a "billing review service" under the terms of the Act, to determine whether Beltway's

---

1. May's first name is variously spelled "Vance" and "Vince" in the record and in the briefs. Counsel for Beltway, which is aligned with May in this appeal, states that May's first name is "Vance."

bill fell at or below the 80th percentile for charges by medical providers within the same community for similar services. The 80th percentile standard is the maximum amount of an employer's "pecuniary liability" for medical services under the Act. Mednet reviewed Beltway's bill and recommended payment of only $5,104.27. IPEP paid Beltway that amount.

On July 1, 2005, Beltway filed an application for adjustment of claim with the Board, seeking recovery of the remaining $6,459.03 on its original $11,563.30 bill. Mednet subsequently recommended payment of an additional $2,230.14 to Beltway, for a total of $7,334.41, leaving $4,228.89 unpaid on the original bill. In proceedings before the Board, Mednet was unable to produce any of the data that it used in its calculation of the amount Beltway was entitled to be paid. Washington Township apparently did attempt to partially recreate some of that data, though using a different medical billing coding system and for years other than when May received treatment.

On June 10, 2008, a Single Hearing Member of the Board ordered Washington Township to pay Beltway the remaining $4,228.89 left unpaid on the original bill. On October 10, 2008, the full Board affirmed this ruling. It determined that Washington Township, through Mednet, bore the burden of producing evidence explaining how Washington Township's pecuniary liability to Beltway of only $7,334.41 had been calculated. Because Washington Township and Mednet failed to produce any such evidence, it concluded Washington Township was required to pay the full amount of Beltway's submitted bill. A majority of the board, however, declined to impose further civil penalties against Washington Township or Mednet. Washington Township now appeals.

## Analysis

When reviewing a worker's compensation decision, we are bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Christopher R. Brown, D.D.S., Inc. v. Decatur County Mem'l Hosp.*, 892 N.E.2d 642, 646 (Ind. 2008). We examine the record only to determine whether there is substantial evidence and reasonable inferences that can be drawn therefrom to support the Board's findings and conclusions. *Id.* As to the Board's legal interpretations, we employ a deferential standard of review to the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area. *Id.* We will reverse the Board only if it incorrectly interpreted the Act. *Id.* In other words, the Board's interpretation of a statute is entitled to great weight and when faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, courts should defer to the agency. *Cincinnati Ins. Co. ex rel. Struyf v. Second Injury Fund*, 863 N.E.2d 1242, 1249 (Ind.Ct.App.2007).

### I. Burden of Proof

This case requires us to review several statutes under the Act that balance the right of medical service providers to seek payment for medical care to injured workers against the right of employers to demand that such payments not be excessive. Indiana Code Section 22–3–3–5 states in part:

> The pecuniary liability of the employer for medical, surgical, hospital and nurse service herein required shall be limited to such charges as prevail as provided under IC 22–3–6–1(j), in the same community (as defined in IC 22–3–6–1(h))

for a like service or product to injured persons.... The right to order payment for all services provided under IC 22–3–2 through IC 22–3–6 is solely with the board. All claims by a health care provider for payment for services are against the employer and the employer's insurance carrier, if any, and must be made with the board under IC 22–3–2 through IC 22–3–6....

"Pecuniary liability" is defined in Indiana Code Section 22–3–6–1(j) as:

the responsibility of an employer or the employer's insurance carrier for the payment of the charges for each specific service or product for human medical treatment provided under IC 22–3–2 through IC 22–3–6 in a defined community, equal to or less than the charges made by medical service providers at the eightieth percentile in the same community for like services or products.

Indiana Code Section 22–3–6–1(i) divides Indiana into eight distinct communities, by zip code.

The Act permits employers and/or their worker's compensation insurer to use a "billing review service" to calculate pecuniary liability to a medical service provider, based on the 80th percentile standard. *See* Ind.Code § 22–3–6–1(f). Indiana Code Section 22–3–3–5.2 sets out specific guidelines governing billing review services and states in part:

(a) A billing review service shall adhere to the following requirements to determine the pecuniary liability of an employer or an employer's insurance carrier for a specific service or product covered under worker's compensation:

(1) The formation of a billing review standard, and any subsequent analysis or revision of the standard, must use data that is based on the medical service provider billing charges as submitted to the employer and the employer's insurance carrier from the same community. This subdivision does not apply when a unique or specialized service or product does not have sufficient comparative data to allow for a reasonable comparison.

(2) Data used to determine pecuniary liability must be compiled on or before June 30 and December 31 of each year.

(3) Billing review standards must be revised for prospective future payments of medical service provider bills to provide for payment of the charges at a rate not more than the charges made by eighty percent (80%) of the medical service providers during the prior six (6) months within the same community. The data used to perform the analysis and revision of the billing review standards may not be more than two (2) years old and must be periodically updated by a representative inflationary or deflationary factor. Reimbursement for these charges may not exceed the actual charge invoiced by the medical service provider.

(4) The billing review standard shall include the billing charges of all hospitals in the applicable community for the service or product.

The central issue in this case surrounding these statutes is, in the event a billing review service claims that a medical service provider's bill has exceeded the 80th percentile standard and recommends payment of less than the billed amount, and the medical service provider decides to challenge that determination before the Board, who bears the burden of proof on whether the bill exceeds the 80th percentile standard—the medical service provider or the employer of the injured employee (or the employer's insurance company)?

The statutes themselves do not directly answer this question.

 It is true that the burden of proof is normally allocated to a party-plaintiff initiating a proceeding and seeking relief. *Schaffer ex rel. Schaffer v. Weast,* 546 U.S. 49, 57, 126 S.Ct. 528, 534, 163 L.Ed.2d 387(2005). However, " '[L]ooking for the burden of pleading is not a foolproof guide to the allocation of the burdens of proof.' " *Alaska Dep't of Envtl. Conservation v. E.P.A.,* 540 U.S. 461, 494, 124 S.Ct. 983, 1005 n. 17, 157 L.Ed.2d 967 (2004) (quoting 2 J. Strong, McCormick on Evidence § 337, pp. 411–12 (5th ed.1999)). Among other considerations, allocations of burdens of production and persuasion may depend on which party has made an affirmative allegation or has peculiar means of knowledge of a fact. *Id.* Thus, we conclude that the mere fact it was Beltway who initiated a claim proceeding before the Board did not automatically place the burden of proof on it to prove that its bill fell within the 80th percentile standard.

Nor are we convinced that the general, well-established requirement that an employee seeking compensation under the Act must prove his or her entitlement to benefits applies in the much different context of this case. *See Milledge v. Oaks,* 784 N.E.2d 926, 929 (Ind.2003); *see also* I.C. § 22–3–2–2(a). That standard speaks to an employee's entitlement to benefits under the Act in the first instance. There is no question here that May was entitled to benefits under the Act, including medical care. The issue is the amount of Beltway's bill that Washington Township and IPEP must pay, not whether it must be paid at all.

Courts in jurisdictions with restrictions on the amount a medical provider may collect under worker's compensation and similar statutory schemes have reached differing results regarding who bears the burden of proving whether a particular medical bill exceeds statutory limitations. For example, in *Mitee Enterprises v. Yates,* 865 S.W.2d 654 (Ky.1993), the Kentucky Supreme Court considered a worker's compensation statute that required an employer to pay for the "reasonable and necessary" medical expenses of an injured employee.[2] The court concluded that even if it was the worker, not the employer, who initiates a claim regarding unpaid medical bills, the employer bore the burden of proving that the medical expenses were unreasonable or unnecessary. *Mitee,* 865 S.W.2d at 656.

By contrast, the Fourth Circuit in *Newport News Shipbuilding and Dry Dock Co. v. Loxley,* 934 F.2d 511 (4th Cir.1991), *cert. denied,* addressed the federal Longshore and Harbor Workers' Compensation Act. That law limits claims for medical services to injured workers "to such charges as prevail in the community for such treatment." *Newport News,* 934 F.2d at 513 n. 1 (quoting 33 U.S.C. § 907(g)). The Fourth Circuit concluded that a medical service provider seeking payment under the law bears the burden of proving that its bills fall within this statutory limit. It noted that if there is a dispute regarding bill payment, the medical service provider may file an administrative action under 5 U.S.C. § 556, and that particular statute explicitly states, "Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof...." *Id.* at 516 (quoting 5 U.S.C. § 556(d)). The court also stated that this assignment of

---

**2.** Kentucky's worker's compensation laws have been amended since *Mitee* to prescribe a specific, administratively-determined fee schedule for medical services. *See* Ky.Rev. Stat. § 342.020(1).

the burden of proof "is consistent with the traditional common law rule ... that the proponent—the one who seeks to establish the affirmative of an issue—carries the burden of proof." *Id.*

We conclude that placing the burden of proof on the employer is more consistent with Indiana law generally and with the Act itself. The 80th percentile rule is a more precise codification of the general principle that medical bills sought to be recovered during litigation be reasonable and not be excessive. *See Butler v. Indiana Dep't of Ins.*, 904 N.E.2d 198, 202 (Ind.2009).[3] In that regard, Indiana Evidence Rule 413 provides that statements of charges for medical expenses "shall constitute prima facie evidence that the charges are reasonable." Pursuant to this rule, "the fact that a statement was submitted is at least some evidence that the charge is normal for the treatment involved, and it was necessary to be performed." *Cook v. Whitsell–Sherman*, 796 N.E.2d 271, 277–78 (Ind.2003). Evidence Rule 413, although not directly applicable in worker's compensation proceedings, evidences the general belief in Indiana that medical service providers should be presumed to charge rea-

sonable rates for their services.[4] It is a presumption the Kentucky Supreme Court recognized in *Mitee.*

If anything, such a presumption should apply even more forcefully under the Act. Mathematically speaking, four out of five submitted medical bills (80%) should theoretically fall within the Act's statutory limitation, with only one out of five (20%) exceeding that limit. Thus, excessive charges should be the exception to the rule. The employer should bear the burden of proving that exception. To conclude otherwise would effectively impose a presumption that medical service providers in worker's compensation cases routinely overcharge; we will not indulge in such a presumption, particularly in the complete absence of proof to that effect, as is the case here.

■ As for the specific language of the Act, we first observe that in Indiana, the employer or the employer's insurer chooses the treating physician; the employee does not. *Young v. Marling*, 900 N.E.2d 30, 36 (Ind.Ct.App.2009), *trans. not sought.* This is for the protection of the employer's interests, as it allows employers to direct

---

**3.** Washington Township contends the recent *Butler* case supports its claim that medical service providers should bear the burden of proving whether their bills fall within the statutory limits of the Act. *Butler* addressed a very different question than the one before us: whether in a wrongful death action an estate may collect the full amount billed by medical service providers but there is evidence the providers accepted less than the full amount billed, because of arrangements with insurance companies, Medicare, and Medicaid. *Butler*, 904 N.E.2d at 201. Our supreme court held that only the actual amount paid was collectible, not the full amount billed. *Id.* at 203. The statutory considerations and actual evidence in *Butler* are much different than in the case before us.

**4.** We acknowledge that our supreme court recently engaged in a lengthy discussion re-

garding the fact that medical service providers often accept as full payment substantially less than the amount of their billed charges, pursuant to contractual arrangements with insurance companies. *See Stanley v. Walker*, 906 N.E.2d 852 (Ind., 2009). A majority of our supreme court ultimately held that evidence of these discounted amounts could be introduced into evidence in personal injury cases in order to determine the reasonable value of provided medical services. *See id.*, at p. 865. The Act, however, specifically and expressly ties the determination of pecuniary liability and the 80th percentile standard by reference to medical service providers's "charges" or "billing charges," not the amount such providers usually actually collect. *See* I.C. §§ 22–3–3–5; 22–3–6–1(j); 22–3–3–5.2. Thus, *Stanley*, like *Butler*, does not affect our analysis in this case.

injured employees away from providers who prescribe excessive services or treatments. *See id.* at 37 n. 3. This right to choose a medical provider also would permit an employer to control costs by choosing providers who tend to charge less. It is logical to require employers and their insurers to prove, despite this ability to control costs by forcing an employee to visit a medical provider of their choice, that a provider's bill still is excessive under the Act.

■ The single most important reason for requiring an employer to prove that a medical service provider's charges have exceeded the 80th percentile is the Act's precise statutory language governing the use of billing review services to calculate pecuniary liability. As recited above, Indiana Code Section 22–3–3–5.2(a) provides very specific guidelines for how a billing review service must go about determining pecuniary liability, i.e. whether a medical service provider's bill falls at or below the 80th percentile of charges made by other providers in the community for similar procedures. The precise knowledge of how a billing review service reached a pecuniary liability determination, and whether it complied with Section 22–3–3–5.2(a) in making that determination, belongs exclusively to the billing review service.[5] It is reasonable to expect an employer or its insurer, which hired the billing review service, to bear the burden of showing compliance with the statute. We further note that, unlike in *Newport News,* Washington Township concedes that the relevant statutes do not explicitly answer the question of who bears the burden

of proof regarding pecuniary liability under the Act.

Additionally, the average health care provider likely has some idea of what the fair market value of its services is, and bills accordingly. The very reason for a billing review service's existence, by contrast, is to gather and analyze quantities of data regarding health care charges submitted by various providers. It is reasonable to presume that medical service providers do not routinely engage in such gathering and analysis, nor are they required to do so. Thus, a billing review service hired by an employer or insurer clearly is in a better position to prove whether a medical service provider's charges exceeded the 80th percentile threshold.

Washington Township and amici contend that placing the burden of proof regarding pecuniary liability upon employers and their insurers will encourage medical service providers to file fee dispute actions with the Board, with a resulting detrimental increase in the cost of worker's compensation insurance and claims paid to medical service providers. We believe there is nothing untoward in medical providers seeking payment of their bills and not permitting employers, insurers, and billing review services to arbitrarily pay less than the full amount of those bills without establishing compliance with the Act. If the General Assembly believes it would be more appropriate for medical providers to bear the burden of establishing that their bills fall within the 80th percentile guideline, it may amend the Act accordingly. It also may consider other measures to contain medical expenses,

5. Washington Township asserts that Mednet did not archive data from which it could reconstruct how it determined Washington Township's pecuniary liability to Beltway. That is, perhaps, unfortunate, but we assume

that following today's decisions billing review services will employ more effort in making sure they can retrieve past data to support its pecuniary liability determinations.

such as promulgating an administratively-determined schedule of fees, as Kentucky has done, if it so chooses.

▬▬ As an additional policy matter, we note that a medical service provider who voluntarily agrees to service an injured worker at the request of the worker's employer is bound by the terms and conditions of the Act. *Brown*, 892 N.E.2d at 650. There are some benefits to medical service providers in agreeing to treat injured workers, such as an assurance of payment that may exceed payment by "ordinary" patients, at least those who lack health insurance. *See id.* at 651. The value of such assurance of payment as an incentive for medical service providers to treat injured workers under the Act would be greatly diminished if employers, their insurers, and billing review services were permitted to make unilateral decisions to pay providers less than the amount of their billed charges without being required to prove the validity of such a reduction.

▬ Washington Township also contends that placing the burden on employers to prove how a billing review service reached its pecuniary liability determination is inconsistent with subsection (b) of Indiana Code Section 22–3–3–5.2, which states:

A medical service provider may request an explanation from a billing review service if the medical service provider's bill has been reduced as a result of application of the eightieth percentile or of a Current Procedural Terminology (CPT) coding change. The request must be made not later than sixty (60) days after receipt of the notice of the reduction. If a request is made, the billing review service must provide:

(1) the name of the billing review service used to make the reduction;

(2) the dollar amount of the reduction;

(3) the dollar amount of the medical service at the eightieth percentile; and

(4) in the case of a CPT coding change, the basis upon which the change was made;

not later than thirty (30) days after the date of the request.

Beltway apparently did not make such a request for information before filing its application for adjustment of claim with the Board, but Washington Township does not contend that such a request is an absolute prerequisite for filing a claim with the Board, nor does it challenge a medical service provider's right to seek compensation through the Board. We would agree generally that it would be preferable for medical service providers to informally seek more information from a billing review service before filing a claim with the Board. Indeed, it always is preferable that parties attempt to settle any disputes informally before proceeding to litigation. However, we fail to perceive what effect Indiana Code Section 22–3–3–5.2(b) should have on the burden of proof question.

▬ For practical purposes, if an employer or its insurer refuses to pay the full amount of a medical service provider's bill, giving the provider incentive to file a claim with the Board, it is the employer who is seeking an affirmative determination by the Board that its pecuniary liability to the provider is less than the billed charges. Thus, the employer should bear the burden of proof on that question. If it fails to carry that burden, the medical service provider should be permitted to collect its billed charges. We conclude that the Board's interpretation of the applicable statutes was reasonable, and we agree with that interpretation.

## II. Amount of Award

Washington Township further argues, notwithstanding the burden of proof issue,

that the Board erred in awarding Beltway the full amount of its billed charges for May's treatment. It directs us to subsection (c) of Indiana Code Section 22–3–3–5.2, which states:

> If after a hearing the worker's compensation board finds that a billing review service used a billing review standard that did not comply with subsection (a)(1) through (a)(4) in determining the pecuniary liability of an employer or an employer's insurance carrier for a health care provider's charge for services or products covered under worker's compensation, the worker's compensation board may assess a civil penalty against the billing review service in an amount not less than one hundred dollars ($100) and not more than one thousand dollars ($1,000).

Washington Township asserts that pursuant to this provision, the most the Board could have awarded Beltway if it concluded Washington Township failed to prove that Mednet complied with Section 22–3–3–5.2(a) was $1,000, and not the full amount of Beltway's bill.

We conclude that this argument is a subtle restatement of the burden of proof issue. In other words, Washington Township wishes to require Beltway to prove that its billed charges fall within the 80th percentile limit before it can be entitled to recoup the full amount of its billed charges. We reject that contention.

As for this statute permitting the Board, in its discretion, to impose a "civil penalty" for a billing review service's failure to comply with the Act in computing pecuniary liability, we believe the statute is clear that the Board is not *limited* to awarding such a penalty. Rather, it is a device intended to deter billing review services from deliberately avoiding the Act's requirements. Moreover, by the express language of the statute any such penalty

would apply directly to the billing review service (here Mednet), not the employer or employer's insurer, who still would remain liable for the medical service provider's bill. Finally, we note that medical service providers are not entitled under the Act to interest on past due medical bills. *See Brown*, 892 N.E.2d at 649–50. This penalty provision would serve as some compensation to medical service providers to whom payment has been improperly delayed. In sum, nothing in the Act prohibits the Board from requiring an employer or its insurer from paying the full amount of a medical service provider's bill, where the employer or insurer fails to establish that the bill exceeds the 80th percentile standard. Any civil penalty provision against the billing review service would be above and beyond the amount of the bill.

Washington Township also contends in its reply brief that, in fact, it did present evidence that Beltway's medical bills exceeded the 80th percentile standard, and that the Board should have limited an any award to Beltway in accordance with that evidence. We have carefully reviewed Washington Township's opening brief for any mention of such an argument and have found none. Rather, that brief was focused exclusively upon (1) the burden of proof question, including whether Beltway's bills were sufficient evidence of pecuniary liability, and (2) whether Indiana Code Section 22–3–3–5.2(c) limited the amount the Board could award to Beltway.

In fact, the Board made an express finding that "[t]he only evidence of the Defendant's pecuniary liability presented to the Board is the billing charges invoiced by the Plaintiff." App. p. 6. Washington Township did not argue in its opening brief that it presented evidence of pecuniary liability, but did attempt to do so in its reply brief. Appellants cannot make an

argument for the first time in a reply brief. *See Estate of Dyer v. Doyle,* 870 N.E.2d 573, 580 n. 1 (Ind.Ct.App.2007), *trans. denied; see also* Ind. Appellate Rule 46(C). To address Washington Township's assertion that it actually presented evidence and met its burden of proof regarding pecuniary liability would be unfair to Beltway, which did not have an opportunity to respond to that assertion. This evidence, in any event, does not appear to apply to the issue of how Mednet reached its pecuniary liability determination. Simply put, Washington Township and Mednet could not and did not produce any of the data Mednet had used in purporting to calculate whether Beltway's billed charges exceeded the 80th percentile standard.

## Conclusion

The Board did not err in requiring Washington Township to prove how Mednet reached its determination of Washington Township's pecuniary liability and to prove that Beltway's billed charges exceeded the maximum amount permissible under the Act. We also conclude the Board did not err in awarding Beltway the full amount of its medical bills for May's treatment, particularly in the absence of any evidence as to how Mednet purported to calculate Washington Township's pecuniary liability. We affirm.

Affirmed.

BAKER, C.J., and MAY, J., concur.