## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 30 2020, 10:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Joseph Banasiak
Highland, Indiana

ATTORNEY FOR APPELLEE

Jeffrey Sturm
George C. Patrick & Associates
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

1st Response Automotive
Repair, 1st Response
Towing & Recovery,
and Roger Jackson, Jr.,

*Appellants-Defendants,*

v.

Brian Ard,

*Appellee-Plaintiff*

January 30, 2020

Court of Appeals Case No.
19A-EX-1571

Appeal from the Worker's
Compensation Board of Indiana

The Honorable Linda Hamilton,
Chairman

Cause No.
C-228727

**Baker, Judge.**

[1] 1st Response Automotive Repair (1st Response Repair), 1st Response Towing & Recovery (1st Response Towing), and Roger Jackson, Jr. (collectively, "the Appellants"), appeal the decision of the Worker's Compensation Board of Indiana (the Board) deeming Brian Ard to be an employee of the Appellants, arguing that Ard should have been deemed an independent contractor. Finding no error in the Board's determination, we affirm.

## Facts

[2] Roger Jackson, Sr., hired Ard to work for 1st Response Repair and 1st Response Towing in November 2012. Ard "was hired to do automotive repair, tow truck repair, and perform such other mechanical repairs as were needed by [the Appellants]." Appellants' App. Vol. II p. 9. Jackson, Jr., testified that he formed 1st Response Repair and 1st Response Towing and that Jackson, Sr., managed the business "day to day[.]" *Id.* at 12.

[3] Ard was initially paid in cash, but was later paid by check every Wednesday. The Appellants billed customers at $55 per hour, out of which Ard received $25. Moreover, "there was no employment agreement between any of [the Appellants] and [Ard]." *Id.* at 12.

[4] Ard worked Monday through Saturday and used tools owned or provided by the Appellants to complete repairs. "[Ard] testified that he did not have any control over others who worked for [the Appellants] and did not set his own hours." *Id.* at 11. Over the course of Ard's employment, the Appellants ended up purchasing parts and supplies that Ard brought to his job. Jackson, Sr., was

Ard's supervisor and frequently gave him directions about the order in which jobs were to be done and the specific type of work that was to be done. Ard reported to Jackson, Sr., for all work-related issues. All repair work took place at the Appellants' shop in Merrillville. Additionally, Ard testified that he never received nor completed tax documents from the Appellants, including 1099 and W-2 forms. There is evidence that Ard filled out tax documents only for the 2014 fiscal year.

On January 14, 2015, Ard fell while working in the Appellants' auto shop, "breaking his left femur[.]" *Id.* at 9. On February 2, 2015, Ard filed an adjustment of claim with the Board. Additionally, during the pendency of his worker's compensation claim, Ard filed a separate civil complaint for damages on July 1, 2016.

After a single member of the Board issued an order on the matter on October 14, 2018, the full Board set the matter for rehearing for April 29, 2019. Soon thereafter, on June 12, 2019, the Board issued an order declaring that "[Ard] was an employee of [the Appellants] at the time of the injury on January 14, 2015[.]" *Id.* at 13. The Board then determined that:

> [Ard] is entitled to receive, and [the Appellants] are jointly and severally obligated to pay, all statutory benefits . . . including all medical expenses incurred as a result of the accident on January 14, 2015.

*Id.* at 14. The Appellants now appeal.

# Discussion and Decision

[7] The Appellants' sole argument on appeal is that the Board erred when it determined that Ard was their employee. The Appellants contend that the Board should have deemed Ard to be an independent contractor because (1) Ard failed to prove his status as an employee; and (2) Ard allegedly admitted in a separate civil lawsuit that he was an independent contractor.

[8] Our review of decisions coming from the Board is well established:

> The Worker's Compensation Board, as the trier of fact, has a duty to issue findings of fact that reveal its analysis of the evidence and that are specific enough to permit intelligent review of its decision. *Triplett v. USX Corp.*, 893 N.E.2d 1107, 1116 (Ind. Ct. App. 2008). "In reviewing a worker's compensation decision, an appellate court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion." *Christopher R. Brown, D.D.S., Inc. v. Decatur Cty Mem'l Hosp.*, 892 N.E.2d 642, 646 (Ind. 2008). We examine the record only to determine whether there is substantial evidence and reasonable inferences that can be drawn therefrom to support [the Board's] findings and conclusion. *Id.* We will not reweigh the evidence or reassess witness credibility. *Triplett*, 893 N.E.2d at 1116. "As to the Board's interpretation of the law, an appellate court employs a deferential standard of review of the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area." *Brown*, 892 N.E.2d at 646. The Board will only be reversed if it incorrectly interpreted [the statute]. *Id.*

*Wright Tree Serv. v. Hernandez*, 907 N.E.2d 183, 186 (Ind. Ct. App. 2009).

[9] Pursuant to the Indiana Worker's Compensation Act, the term "employee" is defined as any "person, including a minor, in the service of another, under any

contract of hire or apprenticeship, written or implied, except one whose employment is both casual and not in the usual course of the trade, business, occupation, or profession of the employer." Ind. Code § 22-3-6-1(b).

[10] To determine whether an individual is an employee or an independent contractor, we analyze the individual's relationship with the employer under the following ten factors:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or by the job;
>
> (h) whether or not the work is part of the regular business of the employer;
>
> (i) whether or not the parties believe they are creating the relation of master and servant; and
>
> (j) whether the principal is or is not in business.

*Howard v. U.S. Signcrafters*, 811 N.E.2d 479, 482 (Ind. Ct. App. 2004). "We consider all factors, and no single factor is dispositive." *Id.*

[11] Against the backdrop of these factors, the record shows that Ard operated under the tutelage and supervision of Jackson, Sr., for nearly three years before he was injured on the job in 2015. Ard performed automotive repairs on towed vehicles all within the Appellants' workshop and used tools primarily furnished by the Appellants. The Appellants even purchased some of Ard's tools and supplies during his tenure. Jackson, Sr., frequently gave directions to Ard about the work that was to be accomplished, constructed the parameters for Ard's day-to-day tasks, and scheduled his working days and hours. Though Ard had one principal job of repairing towed vehicles, it is undisputed that Ard spent the overwhelming portion of his time working for the Appellants and was paid hourly rather than job by job. And while he has specialized skills, Ard nevertheless worked for an auto shop that dealt almost exclusively in the same line of work—repairs. Finally, at the time of Ard's injury, the Appellants were in business.

[12] Despite the lack of tax forms, a written employment contract, and a crystal-clear understanding of the relationship between Ard and the Appellants, the evidence in the aggregate clearly leads to a conclusion that the balance of the ten factors weighs in favor of the Board's conclusion. Therefore, we find that the Board did not err in rendering its decision that Ard was an employee and not an independent contractor. The Appellants' attempt to have us reevaluate the totality of the evidence in favor of their position amounts to a request that

we reweigh the evidence, which we may not do. There is substantial evidence in the record supporting the Board's determination under the Worker's Compensation Act, and we cannot say that the evidence unerringly leads to a conclusion opposite that reached by the Board.

[13] Furthermore, with regards to the Appellants' argument that Ard should be estopped from claiming that he was an employee because he allegedly admitted in a separate civil lawsuit that he was an independent contractor, we find their argument to be unavailing. In its findings of fact and conclusions of law, the Board considered the separate civil complaint in rendering its ultimate decision and nevertheless ruled the way that it did. Once again, we defer to the Board's judgment on these extremely fact-sensitive matters, and there is nothing precluding the Board from deciding a matter differently than how a trial court might decide it. Given its expertise and authority on such determinations, the Board is in the best position possible to make these decisions. Accordingly, we hold that the Board did not err.

[14] The judgment of the Board is affirmed.

Riley, J., and Brown, J., concur.